**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **CAMERON ANGEL BROWN**, |
| Plaintiff, |
| v. |
| **ALPHASENSE, INC.**, |
| Defendant. |

Case No. 1:25-cv-4507 (TNM)

**MEMORANDUM OPINION**

Cameron Brown is a lawyer with a shiny resume and a frustrating tale.  Last year, he

hoped to leave his elite law firm to work for a tech startup called AlphaSense.  The job, however,

did not pan out.  According to Brown, AlphaSense refused to hire him because he would not

violate ethical and confidentiality obligations that he owed his law firm.  He sued AlphaSense in

the Superior Court of the District of Columbia alleging that the company retaliated against and

penalized him for engaging in activity protected by the District of Columbia Human Rights Act

("DCHRA").  AlphaSense removed the case here and now moves to dismiss.  Brown opposes

dismissal and seeks remand.  Because the Court has jurisdiction over the case, it will deny

Brown's remand request.  And the Court will dismiss the case because Brown's own exhibits

contradict his story that he engaged in protected activity.

**I.**

Cameron Brown is a Stanford-educated lawyer who worked as a litigation associate at

Paul Hastings LLP until recently.  Compl. ¶ 11, ECF No. 1-1; *see* Pl.'s Ex. A at 2, ECF No. 1-2

(Brown's resume).  Last spring, he decided he was ready for a change and applied for positions

at several tech companies. *See* Compl. ¶ 12; Pl.'s Ex. B at 3, ECF No. 1-3. AlphaSense was one of those companies. Compl. ¶ 12.

In late April 2025, after completing much of AlphaSense's interview process, Brown learned that the company would not offer him the job. Pl.'s Ex. B at 2; *see* Compl. ¶ 17. At Brown's request for "candid feedback" on his candidacy, AlphaSense's Vice President of Legal—Herbert Wang—connected with him. Pl.'s Ex. B at 2. Over the next week, Wang and Brown emailed about Wang's attempts to confirm Brown's standing with Paul Hastings. *See id.* at 2–4. In the end, Paul Hastings would not talk to Wang about Brown's performance and AlphaSense moved on to other candidates. *See id.* at 4.

A few months later, Brown sued AlphaSense in Superior Court. *See generally* Compl. He claims that AlphaSense violated the DCHRA in three ways. *Id.* ¶¶ 30–44. Each claim turns on Brown's allegation that AlphaSense violated the Act by "condition[ing] his continued candidacy on inducing" Brown to get Paul Hastings to "disclose confidential information." *Id.* ¶ 4. When Brown "declined to breach confidentiality obligations owed to his former employer," he says, AlphaSense ended the job talks. *Id.*

In late December, AlphaSense removed the case here. Notice of Removal, ECF No. 1. Its motion to dismiss followed. Mot. to Dismiss, ECF No. 5. Brown opposes dismissal and also asks the Court to remand the case. Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 14; Mot. to Remand, ECF No. 8. Both the remand motion and the dismissal motion are ripe. The Court takes each in turn.

## II.

First up is Brown's remand request. Brown argues that the Court lacks jurisdiction because AlphaSense did not immediately file a removal notice in Superior Court. *See* Mot. to

2

Remand at 2–3. That is wrong. Remand is inappropriate because the Court has jurisdiction and AlphaSense has rectified the defect.

AlphaSense was entitled to remove this case to federal court because the diversity jurisdiction statute gives this Court "original jurisdiction" over the matter. 28 U.S.C. § 1441(a) (permitting removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction"); *see id.* § 1451(1) (defining "State court" for removal purposes to include the Superior Court of the District of Columbia). The diversity statute grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000," and, as relevant here, "is between . . . citizens of different States." *Id.* § 1332(a). The parties are diverse. *See* Compl. ¶ 9 (Brown is a D.C. citizen); *id.* ¶ 10 (AlphaSense "is a Delaware corporation headquartered in New York"). And the amount-in-controversy requirement is also met. Although Brown does not allege a specific damage amount, AlphaSense points out that Brown's requested damages for the lost job would "plainly" exceed "$75,000.00." Notice of Removal ¶ 7. Brown does not object. So the Court accepts that the amount-in-controversy requirement is met. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."). So jurisdiction exists.

Brown maintains, however, that AlphaSense's procedural error deprives this Court of jurisdiction. *See* Mot. to Remand at 2–4. Two removal procedures are relevant to that argument. First, the defendant must file the "notice of removal" in federal court "within 30 days after" receiving the initial pleading. 28 U.S.C. § 1446(b)(1). AlphaSense did so. *See* Notice of Removal at 1–2. Second, "[p]romptly after the filing of such notice of removal of a civil action

the defendant" must "file a copy of the notice with the clerk of such State court."  28 U.S.C. § 1446(d).  Brown concentrates on this second requirement.  When Brown moved to remand, AlphaSense had not yet provided that notice.  *See* Mot. to Remand at 3; Superior Court Docket at 3, ECF No. 8-1.  AlphaSense rectified the issue two days after it received Brown's motion.  Burns Decl. ¶¶ 4–5, ECF No. 12-3.  Even so, Brown says remand is necessary.  *See* Pl.'s Reply, ECF No. 15.  He is wrong.

*First*, Brown incorrectly describes the prompt notice requirement as jurisdictional.  *See, e.g.*, Mot. to Remand at 2, 6.  Failure to file a copy of the removal notice with the state court is a procedural defect, not a jurisdictional one.  *Koerner v. Aetna U.S. Healthcare, Inc.*, 92 F. App'x 394, 396 (9th Cir. 2003); *see Harris v. Dep't of Transp.*, 122 F.4th 418, 425 (D.C. Cir. 2024) (holding that "the timeliness of removal under section 1446 is a procedural claims-processing rule and is not jurisdictional").  So AlphaSense's error does not affect jurisdiction.

*Second*, AlphaSense's delayed filing does not amount to even a procedural error.  Unlike the firm 30-day deadline for filing a removal notice in federal court, the statute "sets forth no mandatory time period" for notifying the state court about the removal.  *Knezevich v. Carter*, 805 F. App'x 717, 723 (11th Cir. 2020); *see* 28 U.S.C. § 1446(b)(1), (d).  The statute's only direction is that the removing party must give the notice "promptly."  28 U.S.C. § 1446.  Here, AlphaSense notified Superior Court 30 days after it removed the case.  *Compare* Notice of Removal at 2, *with* Burns Decl. ¶ 5.  While not immediate, that notice was arguably "prompt[]." 28 U.S.C. § 1446(d).  Indeed, courts have approved similar delays.  *See, e.g.*, *Knezevich*, 805 F. App'x at 723 ("nearly a month"); *Almonte v. Target Corp.*, 462 F. Supp. 3d 360, 366 (S.D.N.Y. 2020) (34 days).  Courts are especially reluctant to find a procedural defect where, as here, the

opposing party had notice of the removal and suffered no prejudice as a result.  *See Knezevich*, 805 F. App'x at 723; *Almonte*, 462 F. Supp. 3d at 366.

*Third*, even if AlphaSense's initial delay was too long, the Court would not remand the case because the defect has been cured.  The company gave notice just two days after Brown's remand motion highlighted the missing notice.  *See* Burns Decl. ¶¶ 4–5.  And though courts are reluctant to excuse late compliance with § 1446(b)(1)'s 30-day deadline for filing a removal notice in federal court, *see Hargrave v. District of Columbia*, 2009 WL 691122, at *1 (D.D.C. Mar. 13, 2009), they often decline to remand for delayed notice to state court, *see, e.g.*, *Koerner*, 92 F. App'x at 396.  The Court would take that latter course here.

*Fourth*, and finally, Brown's suggestion that the Court should discretionarily remand the case misunderstands the Court's authority.  *See* Mot. to Remand at 5.  Invoking 28 U.S.C. § 1367(c), Brown offers several prudential considerations that he says "support remand or declining jurisdiction."  Mot. to Remand at 5.  But § 1367(c) reaches only claims over which the court exercises "supplemental jurisdiction."  It does not allow a court to discretionarily remand a claim over which it has original jurisdiction.  *See, e.g.*, *In re City of Mobile*, 75 F.3d 605, 607 (11th Cir. 1996) ("Section 1367(c) cannot be fairly read as bestowing on district courts the discretion to remand to a state court a case that includes a properly removed federal claim.").  Because the Court has jurisdiction over Brown's claims, it will deny the remand request.

### III.

Turning to the motion to dismiss, AlphaSense correctly argues that Brown's Complaint fails to state a claim.  So the Court will dismiss the Complaint.[1]

---

[1] Brown's opposition is inadequate for a barred lawyer.  The Court could disregard the filing altogether for failure to comply with the Court's Standing Order.  *See* Standing Order ¶ 12(E),

**i.**

Some background legal principles set the table. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The Court "treat[s] the complaint's factual allegations as true and must grant the plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But the Court need not accept the truth of legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). The Court considers only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up).

Typically, a court applying these standards extends special latitude to a pro se party. *See, e.g.*, *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam). But Brown is a licensed attorney in the District of Columbia. D.C. Bar, *Member Directory*, https://perma.cc/4HEA-G8L6 (accessed May 21, 2026) (listing "Mr. Cameron Angel Brown" as an attorney in "good standing"). So he is not entitled to that same leniency. *See Spence v. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024). The Court nevertheless approaches his filings mindful that it "must construe complaints so as to do justice." *Id.*; *see* Fed. R. Civ. P. 8(e).

---

ECF No. 3 ("Each submission shall be accompanied by a table of cases and other authorities cited therein.").

**ii.**

Brown brings three claims under the DCHRA. The first two arise under D.C. Code § 2-1402.61(a). He claims that AlphaSense violated that provision by interfering with his protected activity and retaliating against him for engaging in the same. *See* Compl. ¶¶ 30–40. His final claim—that AlphaSense refused to hire him because he engaged in protected activity—is similar but arises under D.C. Code § 2-1402.11(a)(1). Compl. ¶¶ 41–44. The three claims largely collapse into one another.[2] Each requires Brown to plausibly allege that he engaged in protected activity. *See, e.g.*, *Sonmez v. WP Co. LLC*, 330 A.3d 285, 328 (D.C. 2025) (requiring a plaintiff to plead that "she engaged in protected activity" to make out a § 2-1402.61 claim); *Morris v. District of Columbia*, 313 A.3d 545, 550 (D.C. 2024) (addressing the same requirement for a § 2-1402.11 claim). "To constitute 'protected activity,' the complaint must allege an employment practice that is prohibited by the DCHRA." *Vogel v. D.C. Off. of Plan.*, 944 A.2d 456, 464 (D.C. 2008). Because Brown has not done so, his claims fail.

Brown lost out on an AlphaSense job because Paul Hastings refused to speak with AlphaSense about his employment standing. Emails attached to Brown's Complaint show as much. Wang told Brown that Paul Hastings contacts "only confirmed that [he was] still employed with the firm" but would not speak to his "specific standing." Pl.'s Ex. B at 3. "Unless you are able to convince them to speak with me more openly about this," Wang wrote, "we will have to move on to other candidates." *Id.* Brown then explained that "any ambiguity . . . likely stem[med] from the Firm's general policy of non-engagement with external inquiries." *Id.* He reassured Wang that he was "actively employed by Paul Hastings, in good standing, with

---

[2] Indeed, Brown's opposition appears to defend only his § 2-1402.61(a) retaliation claim. *See, e.g.*, Pl.'s Opp'n at 1, 6; *cf.* Mot. to Dismiss at 5 (addressing separately the § 2-1402.11(a)(1) claim).

a resignation date already scheduled." *Id.* Brown also reiterated his interest in working for AlphaSense. *Id.* at 3–4. Wang then "tried to push this a bit more with [Brown's] contacts" but found the firm "beholden to [its] policies." *Id.* at 4. So AlphaSense needed to "move on to other candidates." *Id.* In that same email, Wang praised Brown and wished him luck finding another job. *Id.* Brown thanked Wang "for [his] efforts" and wished the company "luck with [its] next candidate." *Id.*

Nothing in this exchange qualifies as protected activity. The DCHRA does not require a past employer to discuss an employee's status, nor does it prevent a prospective employer from verifying that status. In fact, courts routinely hold that merits-based distinctions employers draw based on an employee's status do not offend the DCHRA. *See, e.g.*, *Vogel*, 944 A.2d at 465 ("The DCHRA does not prohibit disparate treatment of employees based on tenure, sponsorship, connections or the like."). Brown does not argue otherwise.

Instead, he tries to satisfy the protected activity requirement by misrepresenting what happened. According to Brown, AlphaSense "condition[ed] his candidacy on an unlawful requirement: that [he] violate confidentiality and professional-ethics obligations owed to a prior employer." Compl. ¶ 1. In other words, Brown alleges that he engaged in protected activity by refusing to breach ethical obligations at AlphaSense's behest. *See, e.g., id.* ¶¶ 1, 20–21; *see also* Pl.'s Opp'n at 6.

The Court cannot credit those false allegations. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (explaining that a court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint"). As already discussed, Brown's exhibits show that AlphaSense declined to move forward with Brown's candidacy because Paul Hastings refused to speak about Brown's standing with the firm. *See* Pl.'s Ex. B at 2–3. Far

from pressuring him into some ethical breach, Wang made clear that AlphaSense needed nothing more from *Brown* at that point, *see id.* at 3–4. At most, Wang suggested that Brown could ask his then-employer to "speak with [AlphaSense] more openly" about Brown's employment status. *Id.* at 3. But the emails make clear that the ball was in Paul Hastings's court. *See id.* at 2–4. And Paul Hastings refused to play. *See id.* at 3–4. As Brown recognized, that was Paul Hastings's right. *See id.* at 3 (Brown's email telling Wang that Paul Hastings had "no obligation to provide support" to an employee applying for jobs elsewhere). So the Court cannot credit Brown's allegation that AlphaSense tried to get him to violate ethical obligations owed to his former employer. *See* Compl. ¶ 1.

Ironically, though, by insisting that AlphaSense forced him to violate ethical rules, Brown puts himself in ethical hot water. As an attorney, Brown owes a duty of candor to the Court. *See* D.C. Rule of Professional Conduct 3.3(a). He fell short of that duty here. Again, his allegation that AlphaSense "condition[ed] his candidacy" on his willingness to "violate confidentiality and professional-ethics obligations" is false. Compl. ¶ 1; *see* Pl.'s Ex. B at 2–4; *Kaempe*, 367 F.3d at 963 (recognizing that, at the pleading stage, a court need not accept as true allegations that "contradict exhibits to the complaint"). Indeed, it is not even borne out by his Complaint's subsequent factual allegations. The Court admonishes Brown to scrupulously adhere to his ethical obligations in the future.

Finally, even if the Court could accept as true Brown's allegation that AlphaSense conditioned a job offer on his willingness to violate ethical duties, Brown's claims would still fail for want of protected activity. Brown's related, more accurate claims that Alphasense "condition continued employment consideration on Plaintiff pressuring his former employer into disclosing confidential information" are similarly unavailing. Compl. ¶ 24. The DCHRA

provides broad protections for employees, but it is not limitless.  The Act aims to prohibit discrimination "for any reason other than that of individual merit," D.C. Code § 2-1401.01, but the D.C. Court of Appeals has cautioned courts against "create[ing] new protected classes not identified by the legislature," *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 887 (D.C. 2008).  So a viable claim typically requires some allegation of status-based discrimination. *See* D.C. Code § 2-1402.11(a) (listing protected statuses for the purpose of employment discrimination).  Brown's claimed activity—unwillingness to breach ethical or confidentiality duties—is absent from that list.

In response, Brown maintains that a § 2-1402.61(a) claim can be cognizable even if the plaintiff did not engage in protected activity, so long as he "reasonably believed" he opposed illegal conduct.  Pl.'s Opp'n at 2.  While true, the cases establishing that principle do not help Brown.  To rely on these cases, Brown must plausibly allege that he "complain[ed] about, or oppose[d]" activity he thought was unlawful.  *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 586 (D.C. 2001) (cleaned up).  Brown's email exhibit once again proves fatal.  The emails show that Brown did not oppose anything.  In fact, Brown told Wang, "I understand" when he learned that the company could not hire him without hearing specifics from Paul Hastings.  Pl.'s Ex. B at 4. And he ended his communications with Wang on a positive note.  *See id.*  So even if AlphaSense pressured Brown into disclosing confidential information, it is hard to see how Brown would have a viable DCHRA claim.

**IV.**

For all these reasons, Brown's motion to remand will be denied, and AlphaSense's

motion to dismiss will be granted.  That dismissal is without prejudice.[3]  A separate Order will

follow.


Dated: July 1, 2026                                        TREVOR N. McFADDEN, U.S.D.J.

---

[3]  The Court declines AlphaSense's invitation to dismiss the case with prejudice.  *See* Mot. to
Dismiss at 6; *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (discussing the "high" bar
for dismissal with prejudice).